UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL KUCHAREVSKY aka Dmitriyy Kucharevsky,

               Petitioner,

    v.

TODD BLANCHE, et al.,

               Respondents.

CASE NO. 2:26-cv-02494-BAT

**ORDER GRANTING HABEAS PETITION AND DIRECTING IMMEDIATE RELEASE**

Petitioner Daniel Kucharevsky[1], currently detained at the Northwest ICE Processing Center ("NWIPC"), was born in the former Soviet Union (now Ukraine) and is a citizen of Israel. Dkt. 6, at 4–5. He was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") on September 23, 2025, pursuant to a February 2007 order of removal that became final in March 2007. Dkt. 10 ("Arambula Decl.") ¶¶ 9, 11; Dkt. 11-2; *see* 8 C.F.R. § 1241. Having been detained for over ten months, Petitioner seeks (1) release from immigration detention; (2) an order preventing removal to a third country without notice and an opportunity to be heard; and (3) further protections against re-detention. As set forth below, the Court **GRANTS** Petitioner's 28 U.S.C § 2241 habeas petitioner and **DIRECTS** his immediate release within

---

[1] Petitioner changed his first name from "Dmitriyy" to "Daniel" when he moved to Israel as a child. Dkt. 12-1 ("Kucharevksy Decl.") ¶ 1.

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
1

**TWENTY-FOUR (24) HOURS**, with a certification of his release to be filed within **FORTY-EIGHT (48) HOURS**.

## BACKGROUND

Petitioner is an Israeli citizen who was born in a part of the former Soviet Union that is now Ukraine. Dkt. 1, at 4–5. He arrived in the United States on a tourist visa in April 2004 and did not depart. Arambula Decl. ¶¶ 5–6. In 2007, Petitioner was ordered deported in absentia after failing to appear for a removal proceeding. Arambula Decl. ¶¶ 8–9. He states that he never received any hearing notices because they were mailed to his ex-wife's house. Dkt. 6, at 6. Petitioner asserts, and Respondents corroborate, that about twenty years ago he applied for an adjustment of status during his first marriage but abandoned that application upon separation and later divorce. Kucharevsky Decl. ¶ 2; Arambula Decl. ¶ 7.[2] He married his current wife in 2018, and she petitioned for his permanent residency in 2019. Kucharevsky Decl. ¶ 3; Arambula Decl. ¶ 10. For years, Petitioner continued to live in the community, and both applied for and received employment authorization cards numerous times. Kucharevsky Decl. ¶ 4. On September 23, 2025, Petitioner was arrested and detained when he and his wife attended an interview for the residency application. Kucharevsky Decl. ¶ 5. Petitioner's motion to reopen his removal proceedings based on lack of notice was denied in January 2026. Arambula Decl. ¶ 16; Kucharevsky Decl. ¶ 6.

Upon filing his habeas petition in July 2026, Petitioner believed that Respondents sought to remove him to Ukraine, where he is not a citizen and which did not exist when he was born.

---

[2] Deportation Officer Arambula erroneously refers to this first application as occurring in 2026, rather than in 2006. Arambula Decl. ¶ 7. Petitioner's I-213 noted that this first application was denied in May 2006. Dkt. 11-3, at 4. DO Arambula refers to Petitioner's second Form I-485 application as occurring in 2019. Arambula ¶ 10.

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
2

Dkt. 6, at 7; Kucharevsky Decl. ¶ 9. In responsive briefing, Respondents assert that sometime after Petitioner's motion to reopen was denied in January 2026, ICE "began efforts to obtain a travel document from the government of Israel so that Petitioner's removal could be effectuated." Dkt. 9, at 4–5 (citing Arambula Decl. ¶¶ 17–20). Respondents have not, however, submitted any evidence whatsoever that the government has been in contact with the embassy of Israel (or any other country) with respect to repatriating Petitioner despite acknowledging that they are in possession of his expired Israeli passport issued in 2004. *Id.* (citing Arambula Decl. ¶ 21). Although Respondents allege that Petitioner refused to complete a travel-document application several times, their supporting documentation shows only that he declined to sign proof of being served with an I-229(a) Form "Warning for Failure to Depart," which set forth the Immigration and Nationality Act ("INA") § 243(a) obligations of a noncitizen with a final order of removal and attached an instruction sheet regarding the requirement to assist in removal.[3] Arambula Decl. ¶¶ 17–20; Dkts. 11-4, 11-5. Petitioner states, "I have been in custody for more than ten months. During that time, the only document related to my deportation that ICE has asked me to sign is the 'Warning to Alien.'" Kucharevsky Decl. ¶ 7. Petitioner asserts that he is not withholding any information and has not provided any false information; "[h]owever, while in custody, I do not have the means to take the many other steps required by the Warning to Alien." *Id.* ¶ 8.

---

[3] The instruction sheet is a checkbox form in which detainees are informed about the "things you are required to complete within 30 days . . . in order [to] comply with your obligation to assist in obtaining a travel document." Dkt. 11-5, at 3. The list includes, for example, submitting passports (current and expired), applying for a travel document from one's embassy or consulate, complying with all instructions from embassies or consulates, submitting identifying documents, providing written copies of requests to embassies or consulates regarding travel documents, and soliciting permission from other countries that may be able to accept the detainee.

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
3

**DISCUSSION**

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under]. . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Petitioner argues that his detention has become indefinite because there is no significant likelihood of his removal to Israel or any other country in the reasonably foreseeable future. Dkt. 6, at 17–18; Dkt. 12, at 5–11. He also claims that Respondents have engaged in a scheme of punitive removal to third countries without providing fair notice and an opportunity to contest the removal in immigration court. Dkt. 6, at 12–16, 19–21; Dkt. 12, at 10–11. Petitioner asks that the Court release him from custody and enjoin Respondents from re-detaining him or removing him to a third country without certain procedural protections. Dkt. 6, at 21–22.

Federal Respondents contend that Petitioner's removal to Israel is reasonably foreseeable because his detention has been prolonged only due to Petitioner's failure to complete the travel-document application required by the country of removal. Dkt. 9, at 6–8. They also oppose Petitioner's claims for injunctive relief, arguing that (1) injunctive relief against third-country removal is not warranted, as there is no evidence that ICE intends to remove Petitioner to any country aside from Israel, *id.* at 8–9, and that (2) his requests for restrictions on re-detention are

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
4

unavailable because his refusal to cooperate justifies his prolonged detention, *id.* at 9–10.

Federal Respondents' arguments are unpersuasive because they cannot identify any information that Petitioner possesses but refuses to produce, and they have failed to provide any indication at all that they have approached Israel to request a travel document. His current detention is therefore unconstitutionally prolonged and indefinite. Although Petitioner's request for a permanent injunction on removal to a third country is premature, he has demonstrated that any attempt to remove him to a third country must be accompanied by procedural protections, and that he should afforded certain other protections upon release.

## I.    Petitioner's Indefinite Detention

As a noncitizen who has been detained for over ten months after a final order of removal, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Federal Respondents have failed to indicate when and whether they have sought a travel document from Israel and there is no indication whatsoever that Israel knows that Petitioner has been ordered removed. This "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Federal Respondents have not met that burden here. Respondents contend that Petitioner "holds the keys to his own freedom," Dkt. 9, at 8, because he "refused to complete a travel-document application," *id.* at 5. That contention is not borne out by the record. There is no indication that Federal Respondents asked Petitioner to complete a travel-document application; rather, they documented that Petitioner declined to accept service of an I-229(a) Form "Warning for Failure to Depart" that set forth the law and attached an informational sheet about what a noncitizen must do to assist in removal. *See, e.g.*, Dkts. 11-4,

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
5

11-5. Respondents do not identify any steps taken towards removing Petitioner. Instead, Respondents appear to insist that Petitioner bears the burden of securing his own travel document, and that his failure to acknowledge that burden amounts to non-cooperation justifying open-ended detention. This argument contradicts the realities of civil detention:

> The Court is perplexed and confounded by Respondents' insistence that the burden of facilitating removal should be shifted to someone who they themselves hold in a prison-like detention setting. *See e.g. Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) (finding that petitioner demonstrated that conditions at the NWIPC are akin that of a prison by asserting that "he is confined in a restrictive setting, where he is permitted to go outside only twice a week, for forty minutes each time," as well problems with food, medical neglect, and cleanliness); *see also Diaz Reyes v. Wolf*, No. C20-377, 2020 WL 6820903, at *7 (W.D. Wash. Aug. 7, 2020) (finding that the NWIPC conditions are similar to jails and prisons). Respondents assert Petitioner's burden without providing any explanation as to how Petitioner might be expected to make such calls or contacts with foreign consulates while detained . . . .

*Saadhom v. Bondi*, 829 F. Supp. 3d 907, 916 (W.D. Wash. 2026). Although Respondents assert that they "are actively pursuing removal to Israel, the country of citizenship designated in the final removal order," Dkt. 9, at 8, the record suggests that there is nothing "active" about their efforts. On filing his habeas petition, Petitioner stated that ICE agents told him that he was to be deported to Ukraine, a factual allegation that Respondents have not disputed. Dkt. 6, at 7; *see also* Kucharevsky Decl. ¶ 9. Respondents similarly do not dispute Petitioner's assertion that Federal Respondents have not approached him to talk about travel documents, taken his picture for travel documents, or referred to any missing information that might impede securing travel documents. Dkt. 6, at 7. Moreover, Respondents do not contradict that Petitioner had not until after the filing of his petition ever seen a copy of the immigration judge's 2007 order of removal and did not know of its existence until he was arrested and detained in September 2025. *Id.* at 6–

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
6

7. Respondents cannot rebut Petitioner's showing of no significant likelihood of removal by pointing to their complete abnegation of responsibility to do anything at all to assist him in obtaining travel documents or to effectuate his removal while he languishes in prison-like conditions.

Respondents' citations to *Lema* and *Pelich* are inapposite. Dkt. 9, at 6–8; *see Lema v. U.S. INS*, 341 F.3d 853 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2023). In *Lema*, the petitioner, who was Ethiopian, told the Ethiopian consulate that he was Eritrean, preventing his receipt of travel documents from that country for removal purposes. *Lema*, 341 F.3d at 857. In *Pelich*, the petitioner misled the INS, providing it with "conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality," and refusing to complete a Polish passport application. *Pelich*, 329 F.3d at 1059. Here, Petitioner's conduct does not amount to noncooperation sufficient to defeat his *Zadvydas* claim of indefinite, prolonged detention. Petitioner declining to sign acknowledgment of being served with information about the law and his obligations does not amount to affirmative misrepresentation or refusal to apply for travel documents as in *Lema* and *Pelich*. Respondents acknowledge that they have Petitioner's expired Israeli passport, do not suggest they lack any information about his identity, and do not suggest that they have ever been in contact with the Israeli consulate or embassy with respect to Petitioner. Respondents cannot specify any way in which Petitioner has impeded his removal to Israel, implying only that he has not done enough and the government has no obligation to do anything at all despite placing significant restraints on his liberty. Although Respondents cite *Lema* and *Pelich* for the proposition that Petitioner "holds the keys to his freedom," Dkt. 9, at 8, immigration detention should not be an escape

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
7

room in which the detainee is left in the darkness to overcome labyrinthine obstacles to unlock a door that can be opened by Respondents with the twist of a knob.

Respondents have failed to show why the writ of habeas corpus should not issue on the ground that Petitioner's removal is not reasonably foreseeable, and thus his continued detention offends due process.

## II.       Third-Country Removal

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event Federal Respondents attempt to remove him to Ukraine or to a country other than Israel. Dkt. 6, at 18–21; Dkt. 12, at 10–11. The Court agrees with Respondents that, on the current record, Petitioner has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief in the form of an order prohibiting Respondents from removing him to a third country. Dkt. 9, at 8–9; *see eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief). Respondents state that they currently intend to seek Petitioner's removal to Israel. Dkt. 9, at 8. Plaintiff's request for a permanent injunction on removal to a third country is therefore premature and is denied without prejudice.

Nonetheless, the Court agrees with Petitioner that Respondents' current third-country removal policy does not accord with due process or the INA. Dkt. 6, at 8–16, 19–21. Dkt. 12, at 10–11. "[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001) and 8 U.S.C. § 1231(b)). Courts in this district have

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
8

held that where the government intends to seek removal to a third country, due process requires, among other things, "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden*, 409 F. Supp. 3d at 1019; *see Arenado-Borges v. Bondi*, 2025 WL 3687518 (W.D. Wash. Dec. 19, 2025), at *6–7 (collecting cases and requiring the government to provide notice and a meaningful opportunity to respond in the event of third-country removal).

At the outset of the proceedings, Petitioner believed that Respondents sought to deport him to Ukraine, his birthplace where he is not a citizen. Respondents allege that Petitioner is legally required to "solicit permission from another country . . . to enter that country to affect your removal from the United States." Dkt. 11-5, at 3. Should removal to Israel prove to be unfeasible, Federal Respondents have demonstrated that they will seek to remove him to Ukraine or another third country through procedures that require due process protections. Thus, should Respondents take steps to remove Petitioner to a country other than Israel, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond.

### III.    Further Protections Against Re-Detention

The Court has found that Petitioner's prolonged, indefinite detention without the reasonable likelihood of removal violates procedural due process. This conclusion requires that the government not re-detain Petitioner without notice, a hearing, and changed circumstances. *See, e.g.*, *Nasser v. Blanche*, 2026 WL 1256153, at *4 (W.D. Wash. May 7, 2026); *Faqeri v. Scott*, 2026 WL 194475 (W.D. Wash. Jan. 26, 2026); *Kumar v. Wamsley*, 2026 WL 251798 (W.D. Wash. Jan. 30, 2026); *cf. Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025).

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
9

Petitioner also seeks the protection of an order that Respondents may not subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that he is a flight risk or danger to the community and that no other alternatives mitigate those risks. Dkt. 6, at 22. Petitioner notes that Respondents have frequently imposed GPS monitoring as a condition of release in this district, presumably in response to an ICE memorandum that ankle monitors be used "whenever possible." Dkt. 12, at 11; *see* Dkt. 6, at 22. Respondents have not substantively responded to this argument because they assert that Petitioner is entitled to no relief whatsoever. Dkt. 9, at 9–10.

The Court finds Petitioner shall be released without GPS monitoring as a condition of release, absent clear and convincing evidence that he is a flight risk or a danger to the community and that no other alternatives mitigate those risks. *See, e.g.*, *Singh v. Noem*, 2026 WL 879247, at *6 (W.D. Wash. Mar. 31, 2026); *Chicoze-Ezechi v. Noem*, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026); *see* 8 C.F.R. § 241.13(h)(1) ("The order of supervision may also include any other conditions that the HQPDU considers necessary to ensure public safety and guarantee the alien's compliance with the order of removal.").

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1.      The petition for writ of habeas corpus is **GRANTED**. Dkt. 6.

2.      Respondents shall **RELEASE** Petitioner with reasonable conditions within **24 HOURS** of entry of this order and file a status report certifying he has been released within **48 HOURS** of entry of this order.

3.      Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf **SHALL NOT** subject Petitioner to GPS monitoring as a condition

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
10

of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks.

4.      Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

5.      Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf may not remove Petitioner to any third country unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker to determine whether such removal is appropriate.

6.      Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 13th day of August, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION
AND DIRECTING IMMEDIATE RELEASE -
11